**Donald J. DIBBLE, Plaintiff,**

v.

**Major General John H. FENIMORE, V; Secretary of the Air Force F. Whitten Peters, Defendants.**

**No. 97–CV–1256 (LEK/RWS).**

United States District Court, N.D. New York.

Jan. 19, 2000.

Gaffney, Schember Law Firm, Washington DC, Daniel M. Schember, of counsel, for plaintiff.

Hon. Eliot L. Spitzer, Attorney General of the State of New York, Department of Law, Albany, NY, Honorable Daniel

French, United States Attorney, Albany, NY, James C. Woods, Assistant U.S. Attorney, Bruce J. Boivin, Assistant Attorney General, Daniel M. Schember, of counsel, for defendants.

## MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

### I. *Background*

Plaintiff Donald J. Dibble was a federal excepted service technician who was employed under 32 U.S.C. § 709 by the New York Air National Guard ("Air Guard" or "NYANG"). He was also a steward for his union at Stewart Air National Guard Base, the Association of Civilian Technicians, which has a collective bargaining agreement with the Air Guard. Although he was a federal civilian employee, § 709(b) required that he maintain military membership in the Air Guard as a condition of this employment. At the end of his enlistment period in 1994 the Air Guard denied his request to reënlist. He was honorably discharged 8 October 1994, and at that time was automatically separated from his civilian technician employment.

Plaintiff claims that the Air Guard wrongfully denied his request to reënlist in retaliation for his union activities, and in violation of his statutory and constitutional rights. (Decl. Daniel M. Schember at 2, ¶ 1 (Doc. 40, 19 Oct. 1998)). Plaintiff further asserts that "[t]he stated reason for the reenlistment denial was ... 'performance in a military capacity.' [Plaintiff] was not accused of 'misconduct or delinquency.'" (*Id.* at 3, ¶ 2.) Defendants, in contrast, assert that he was denied reënlistment because of incidents of misconduct. (Def.'s Mot. Dismiss, or for Summ.J. at 13–14 (Doc. 37, 19 Oct. 1998).)

### II. *Procedural Posture*

In October 1994, Plaintiff asked the Inspector General of the New York National Guard to investigate his reënlistment denial. In April 1995 the Inspector General

upheld the Air Guard's action. In December 1995 Plaintiff asked the Inspector General to reconsider his decision; the Inspector General responded that Plaintiff could apply to the Air Force Board for Correction of Military Records ("AFBCMR," or "Correction Board") for a correction of his military record. Plaintiff did so. The Correction Board denied his application on 28 Oct. 1997. (*See* Admin.R. (hereinafter "A.R.") at 1–2 (Attach. 1 to Doc. 37).)

Plaintiff filed this action 26 August 1997, pursuant to 5 U.S.C. § 706, 10 U.S.C. § 1552, 32 U.S.C. § 709 and 42 U.S.C. § 1983. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). Plaintiff seeks (1) a determination that the 1994 denial of reënlistment, with consequent loss of civilian employment, was unlawful, (2) a determination that the 1997 refusal to reënlist him in his former unit was unlawful, and (3) equitable relief correcting his employment and military records to show that he was not denied reënlistment in 1994, that he was not separated from his civilian employment, and that he has continued to serve to the present, without interruption, in both his military and civilian employment capacities. (*See* Decl. Daniel M. Schember at 4, ¶ 6.)

### III. *Motions*

Now before the Court are several dispositive motions. Secretary of the Air Force F. Whitten Peters ("Federal Defendant") has moved to dismiss the complaint, or, in the alternative, for summary judgment. (*See* Notice of Mot. (Doc. 35, 19 Oct. 1998).) Plaintiff has made a cross motion for partial summary judgment (*see* Notice of Pl.'s Cross Mot. Partial Summ.J. (Doc. 39, 19 Oct. 1998), requesting that the Court

find the [Correction] Board's decision [to deny Plaintiff's application] to be arbitrary and capricious and to award the relief that is appropriate at this time— remand to the Board for proper inquiry, reconsideration, and issuance of proper findings and reasons.

(Pl.'s Mem.Law Supp'ing Pl.'s Opp'n to Def.'s Mot. Dismiss, or for Summ.J. and Supp'ing Pl's Cross Mot. Partial Summ.J. (hereinafter "Cross Mot.Mem.") at 3 (Doc. 41, 19 Oct. 1998).) New York Air National Guard Major General John H. Fenimore V ("State Defendant") moves to dismiss the complaint on the grounds that (1) Plaintiff has failed to exhaust the available administrative remedies under New York State Military Law, and (2) "the issue he presents is a nonjusticiable discretionary military matter." (Mem.Law Supp. State Def.'s Mot. Dismiss Compl. (hereinafter "State Def.'s Mem.") at 1 (Doc. 49, 2 Dec. 1998).) The State Defendant also joins the arguments of the Federal Defendant in his motion to dismiss.

### A. *Standards of Decision*

#### 1. *Dismissal*

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In assessing the sufficiency of a pleading, "all factual allegations in the complaint must be taken as true," *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied sub nom., Soifer v. Bankers Trust Co.*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

> [C]onsideration is limited to the factual allegations in [the] complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

The Rules do not require the plaintiff to set out in detail the facts upon which the claim is based, but only that a defendant be given "fair notice of what the claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987).

#### 2. *Summary Judgment*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). A genuine issue is an issue that, if resolved in favor of the non-moving party, would permit a jury to return a verdict for that party. *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence . . . in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

The Court addresses the motions on the basis of these standards.

## IV. *Discussion*

### A. *Federal Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment*

■ Federal Defendant argues that the Court should dismiss the complaint because it lacks jurisdiction over Plaintiff's eligibility to reënlist and the disposition of his application for reënlistment, which Defendant asserts are nonjusticiable military matters. (Def.'s Mot. Dismiss, or Summ.J. at 2.) In so arguing, however, Defendant misapprehends the gravamen of the complaint, which focuses not on the initial denial of reënlistment, but on the reasonableness of the Correction Board's review of that action. Notwithstanding Defendant's arguments, decisions of the Correction Board "are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983).

The Court has, in addition, reservations about the categorical scope of Federal Defendant's argument that discretionary decisions by military officials are not subject to judicial review despite Constitutional or statutory guarantees of rights (Def.'s Mot. Dismiss, or Summ.J. at 4–7 & n. 4). The logical conclusion of applying that argument to *all* conceivable cases would be that a military official could engage in unlawful discrimination or retaliation against a protected person, and need only make sure that the adverse action falls in a category characterized as "discretionary" or "internal" to avoid any risk of the unlawful act—no matter how egregious—being reviewed in court. Indeed, by *definition* an act of discrimination *must*, at some stage, stem from a discretionary act. The meaning of "discrimination" is, at its most elemental, inextricably linked with *choice*. There is by definition *no* choice in a *non*discretionary act. Therefore, by itself, a *non*discretionary act could never give rise to a claim of discrimination.[1] The Court will not conclude that Congress would have provided that protected persons should have certain rights, but left those persons without recourse under law for adjudicating violations of their rights.

For the foregoing reasons, the Court must DENY Federal Defendant's motion to dismiss the complaint.

With respect to Federal Defendant's summary judgment argument, the fundamental question is whether there is a genuine issue of material fact that would support a conclusion that, pursuant to the provisions of the Administrative Procedure Act, the Correction Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A). The decision of an administrative agency is "arbitrary and capricious" if that body "relied on factors [that] Congress has not intended it to consider, entirely failed to consider

---

**1.** The Court recognizes, of course, that discretionary acts *with* discriminatory purpose—for example, the passage of discriminatory legislation—can give rise to nominally nondiscretionary acts that in fact carry out the discriminatory purpose.

an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

■ In at least one respect, there is an issue of material fact that bears on whether the Correction Board offers an explanation for its decision that runs counter to the evidence before it. The Correction Board relied on the Air Force advisory opinion in denying Plaintiff's application. (*See* A.R. at 2.) The advisory opinion, submitted by Lt. Col. Nilda E. Urrutia, U.S.A.F., concluded that a series of "minor infractions" from 1990 to 1994 "form[ed] a legally sufficient basis for discharging SSgt Dibble for unsuitability for further military service." (*Id.* at 488–89.) In its next paragraph, however, the advisory opinion notes that on 14 December 1995 the Air Guard corrected Plaintiff's Report of Separation and Record of Service to read that he is "eligible" to reënlist in the Air Guard. (*See id.* at 489–90.) Defendant has offered no explanation of how someone who is "unsuitab[le] for further military service" could at the same time be "eligible to reenlist in the NY ANG." Nor is any cogent rationale readily apparent to the Court. Because the Correction Board's explanation of its decision runs counter to this evidence—indeed, it appears wholly irreconcilable with it—the Court must DENY Federal Defendant's motion for summary judgment.

B. *State Defendant's Motion to Dismiss*

■ State Defendant argues that Plaintiff's complaint must be dismissed because he has failed to exhaust his administrative remedies. (*See* State Def.'s Mem. at 9–11.) The general rule under § 1983, that a plaintiff is not required to exhaust administrative remedies, does not apply to a suit arising from the failure of a military service to follow its own regulations, where

"[t]he exhaustion requirement is contained in the very regulations that plaintiff seeks to have enforced." *Jones v. New York State Div. of Mil. and Naval Affairs,* 166 F.3d 45, 54–55 (2d Cir.1999). The Court has, however, found no exhaustion requirement in any regulation Plaintiff seeks to have enforced; State Defendant has pointed out none. State Defendant's "exhaustion of administrative remedies" argument is thus unavailing.

State Defendant further asserts that Plaintiff's complaint must be dismissed because he seeks relief on a military personnel issue that is non-justiciable. For substantially the same reasons detailed above in the discussion of Federal Defendant's motion to dismiss, the Court finds that Plaintiff's claims are justiciable. Accordingly, the Court must DENY State Defendant's motion to dismiss.

C. *Plaintiff's Cross Motion for Partial Summary Judgment*

1. *Northern District Motion Practice*

Local Rule 7.1(a)3 (formerly 7.1(f)) requires that the party opposing a motion for summary judgment shall file a response to the moving party's Statement of Material Facts. That response

shall mirror the movant's Statement … by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises…. *Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.*

In his cross motion for partial summary judgment, Plaintiff submitted a Rule 7.1(a)3 statement under the title Pl.'s Statement of Material, Genuinely–Disputed Facts and Material Facts as to Which There is No Genuine Issue (hereinafter "Pl.'s 7.1(a)3 Statement"), attached to Cross Mot.Mem. (Doc. 41). Plaintiff's statement in part responded, as required

under the Local Rule, to Federal Defendant's 7.1(a)3 Statement of Material Facts Not at Issue (Doc. 36, 19 Oct. 1998). (*See* Pl.'s 7.1(a)3 Statement at 3–5.) Then, in accordance with L.R. 7.1(a)3, as part of his cross motion for summary judgment, Plaintiff further set forth a statement of material facts as to which he contends there is no genuine issue. (*Id.* at 5–8.)

In response to the cross motion's 7.1(a)3 statement, neither Federal Defendant nor State Defendant submitted a 7.1(a)3 statement. The Defendants thus failed to comply with L.R. 7.1(a)3's requirement that each submit a response that "mirror[s] the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." Because Defendants have not met this obligation to controvert with specificity the facts set forth in Plaintiff's statement, the Court in accordance with L.R. 7.1(a)3 will deem admitted as uncontroverted all the facts set forth in Pl.'s 7.1(a)3 Statement at 5–8.

Among these admitted uncontroverted facts are that Plaintiff's submissions to the Correction Board "presented evidence and argument supporting his claims that" (1) his Air Guard superiors were hostile toward him because of his union activities, (2) these superiors punished Plaintiff, but not other Air Guard members, for minor transgressions, (3) these superiors sought to suspend Plaintiff for purported misconduct that was far less serious than misconduct by other Air Guard members that they ignored, (4) these superiors wanted to retaliate against Plaintiff because he defeated their attempt to suspend him, (5) these superiors denied Plaintiff reënlistment in the Air Guard, and thus terminated his employment, for pretextual reasons that would apply to many Air Guard members who were *not* denied reënlistment— pretextual reasons that were "far less significant than misconduct by others" who were not barred from reënlistment—and (6) these superiors denied Plaintiff reënlistment in retaliation for his exercise of statutory and Constitutional rights related to his union, workplace, and Air Guard activities. (*See id.* at 5–6.)

Also admitted as uncontroverted is that Plaintiff demonstrated that he had requested, but not received, records from the Air Guard relating to performance evaluations, decisions to grant or deny reënlistment, and union activities, of other members of his Air Guard unit; that the Correction Board neither requested nor obtained such records, nor did it address the Air Guard's failure to provide those records to Plaintiff; that he requested that the Correction Board obtain information relating to the relief from command of "the officer principally responsible for denying" Plaintiff's reënlistment, but that the Correction Board did not obtain this information; that the Correction Board based its decision to deny Plaintiff's application "solely on the 'facts and opinions stated in the advisory opinion'," but that neither the advisory opinion nor the decision explained the apparently unreconcilable conclusions that while a series of minor infractions made the Plaintiff "unsuitab[le] for further military service," he was nonetheless eligible to reënlist in the Air Guard; and that the advisory opinion and decision failed to address any of the evidence supporting, or make any findings regarding, Plaintiff's contentions as detailed in the points numbered (1) through (5) in the paragraph immediately above this one. (*See id.* at 6–8.)

### 2. *Application of Facts and Standards to Cross Motion*

A court that reviews an agency decision must be deferential to the agency's expertise and ultimate substantive decision, but it also must require "that the agency exercise its discretion in a reasoned manner." *Kreis v. Secretary of the Air Force,* 866 F.2d 1508, 1512 (D.C.Cir.1989). An agency fails to exercise its discretion in a reasoned manner if, pursuant to the provisions of the Administrative Procedure Act, its decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law." *See* 5 U.S.C. § 706(2)(A). An agency decision is "arbitrary and capricious" if the agency "relied on factors [that] Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856. As with other agencies, decisions of the Correction Board "are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *Chappell,* 462 U.S. at 303, 103 S.Ct. 2362.

As detailed above, the uncontroverted facts show that the Correction Board had before it specific allegations that Air Guard authorities directed bias, animus and inequitable treatment against the Plaintiff. The uncontroverted fact that the Air Guard deems Plaintiff eligible to reënlist renders highly suspect the conclusion that a series of admittedly minor infractions made Plaintiff "unsuitable" for military service. In view of this, it was not reasonable for the Correction Board to "entirely fail[ ] to consider an important aspect of the problem." 463 U.S. at 43, 103 S.Ct. 2856. The uncontroverted facts are that the Correction Board did not make certain records available to the Plaintiff or obtain that information for its own review. That information could be relevant to Plaintiff's allegations that his superiors' bias or desire to retaliate against him led them to deny his reënlistment on pretextual grounds. That, in turn, could explain the inconsistency of a person deemed eligible for reënlistment being found at the same time to be "unsuitable" for further military service. Accordingly, the Correction Board's failure to consider an important aspect of the matter before it is substantively linked to "an explanation for its decision that runs counter to the evidence before [it]." *Id.*

■ Because there is no genuine issue of material fact adverse to Plaintiff's contention that the Correction Board's deci-

sion was arbitrary and capricious, Plaintiff is entitled as a matter of law to partial summary judgment on his cross motion, and the Court GRANTS his motion for partial summary judgment. Pursuant to 5 U.S.C. § 706, the Court remands the case to the Correction Board for proper inquiry, consideration, findings, and reasons. The Correction Board will obtain, and make available to Plaintiff, any evidence relevant to assertions that Plaintiff's Air Guard superiors were hostile toward him because of his union activities or that they desired to retaliate against him because he defeated their attempt to suspend him. The Correction Board will also obtain and make available to Plaintiff records of members of his Air Guard unit who have in a relevant time period been granted or denied reënlistment, with respect to (1) their "performance in a military capacity," (2) the bases for the decisions to grant or deny them reënlistment, and (3) in each case whether the Air Guard member was also employed as a technician and had ever served as a union official.

Specifically excluded from this order is information or documents pertaining to the relieving of command of Major John J. Birmingham, to any misconduct or unsatisfactory duty performance by him, or to any investigation of alleged misconduct or unsatisfactory duty performance by him. Plaintiff requested production of these documents earlier in these proceedings. Defendants submitted the documents in question for *in camera* review by the Honorable Ralph W. Smith, Jr., United States Magistrate Judge. After careful examination of the documents, Magistrate Judge Smith concluded "that there is nothing contained therein [that] would be in any way relevant or calculated to lead to the discovery of admissible evidence...." (Order at 3 (Doc. 56, 7 Dec. 1998).) Whether to obtain those documents for review is accordingly left to the discretion of the Correction Board.

The Court directs the Correction Board to address these issues:

(1) Whether Plaintiff's Air Guard superiors were hostile toward him because of his past union activities;

(2) Whether Plaintiff's Air Guard superiors punished Plaintiff, but not other Air Guard members, for minor transgressions;

(3) Whether Plaintiff's Air Guard superiors sought to suspend Plaintiff for purported misconduct that was far less serious than misconduct by other Air Guard members that they ignored;

(4) Whether Plaintiff's Air Guard superiors desired to retaliate against Plaintiff because he defeated their attempt to suspend him; and

(5) Whether Plaintiff's Air Guard superiors denied Plaintiff reënlistment in the Air Guard, and thus terminated his employment, for pretextual reasons that would apply to many Air Guard members who were *not* denied reënlistment—pretextual reasons that were "far less significant than misconduct by others" who were not barred from reënlistment.

The Court further directs the Correction Board to make specific and numbered findings of fact, and conclusions of law based on such factual findings, on each of Plaintiff's claims as detailed herein. The Correction Board shall take care to enunciate a reason for its decision that the Court can measure against the "arbitrary and capricious" standard of the A.P.A., *see Kreis,* 866 F.2d at 1514–15, and to offer an explanation for its decision that does not run counter to the evidence before it, *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856—most notably, to the evidence that the Air Guard has found Plaintiff eligible for reënlistment.

### · *CONCLUSION*

For the reasons stated above, it is hereby:

ORDERED that Federal Defendant's motion to dismiss the complaint, or, in the alternative, for summary judgment against Plaintiff, is **DENIED;** and

IT IS FURTHER ORDERED that State Defendant's motion to dismiss the complaint is **DENIED;** and

IT IS FURTHER ORDERED that Plaintiff's cross motion for partial summary judgment is **GRANTED;** and

IT IS FURTHER ORDERED that this case is **REMANDED to the Correction Board** for proper inquiry, reconsideration, and issuance of proper findings and reasons, in accordance with the directions specified herein; and

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.